IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**CONNIE F. VIGIL,**

       **Plaintiff,**

v.                                                                      **CIV 03-0296 LAM**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

       **Defendant.**

## **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Plaintiff's Motion to Reverse or Remand Administrative Agency Decision *(Doc. 11)*, filed on August 11, 2003. In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to having the undersigned United States Magistrate Judge conduct all proceedings and enter final judgment in this case. The Court has reviewed Plaintiff's motion and the memorandum in support of the motion, Defendant's response to the motion, Plaintiff's reply to the response and the relevant law. Additionally, the Court has carefully reviewed and considered the entire administrative record (hereinafter *"R"*). For the reasons set forth in the Memorandum Opinion and Order, the Court **FINDS** that Plaintiff's motion should be **GRANTED IN PART AND DENIED IN PART** and this case **REMANDED** to the Commissioner of Social Security (hereinafter "the Commissioner") for further proceedings, including a re-hearing if necessary, consistent with this Memorandum Opinion and Order.

## I.  Procedural History

Plaintiff was born on August 20, 1964.  *(R. at 43.)*  Her past work history includes work as a bingo caller, cashier and janitor.  *(R. at 55, 77.)*  Plaintiff has a high school education.  *(R. at 60.)*

Plaintiff filed an application for supplemental security income on January 25, 1999 and an application for disability insurance benefits on February 4, 1999. *(R. at 43, 158.)* Plaintiff alleges she has been disabled since September 15, 1996, due to back and hand problems, specifically pain following back surgery and limited use of her right hand following reconstructive surgery. *(R. at 54, 56, 158.)*

Plaintiff's claims were denied initially and again upon reconsideration by the Social Security Administration.  *(R. at 26, 33.)*  Thereafter, Plaintiff filed a timely request for a hearing before an administrative law judge (hereinafter "ALJ"). *(R. at 36.)*  The ALJ held a hearing on Plaintiff's claims on March 23, 2000.  *(R. at 175A - 199.)*  Plaintiff testified at the hearing.  *(R. at 175A - 199.)* Plaintiff was represented by paralegal Jane Craig at the hearing.  *(R. at 12, 175A.)*  The ALJ applied the five-step evaluation sequence required by 20 C.F.R. §§ 404.1520 and 416.920(2003), and at step four concluded that Plaintiff was not under a "disability" as defined in the Social Security Act and regulations, at any time from September 15, 1996, the alleged date of onset of Plaintiff's disability, through April 25, 2000, the date of the ALJ's decision.  *(R. at 9 - 15.)*

Specifically, the ALJ made the following findings, *inter alia*, with regard to Plaintiff pursuant to the sequential analysis set forth in 20 C.F.R. § 416.920:  (1) claimant met the special earnings requirements of the Act on September 15, 1996 and continues to meet them; (2) claimant has not engaged in substantial gainful activity during the period under review; (3) claimant's alleged impairments include a crush injury to her right hand and amputation of her little finger, status-post

2

surgery, and chronic back pain, status-post laminectomy and discectomy[1]; (4) during period under review the claimant has had no condition which medically meets or equals the requirements of any condition described in Appendix 1, Subpart P, Regulations No. 4, with specific review of section 1.00; (5) claimant's reports and testimony of symptoms and functional restrictions was not supported by the evidence overall in the disabling degree alleged, and therefore lacked credibility; (6) claimant has retained a residual functional capacity which supports light work for all consecutive twelve month periods under review; nonexertional factors have not significantly eroded this work capacity; (7) claimant has been able to perform the requirements of her past relevant work as a bingo caller during all consecutive twelve month periods under review; (8) claimant has not been disabled under the standards of the Social Security Act at any time through the date of this decision. *(R. at 13 - 15.)*

The ALJ entered his decision on April 25, 2000. *(R. at 15.)* Thereafter, Plaintiff filed a request for review. *(R. at 8.)* On January 24, 2003, the Appeals Council issued its decision denying Plaintiff's request for review and upholding the decision of the ALJ. *(R. at 5 - 7.)* The ALJ's decision became the final decision of the Commissioner. Plaintiff subsequently filed this complaint for court review of the ALJ's decision on March 7, 2003. *(Doc. 1.)*

On appeal, Plaintiff alleges: (1) the ALJ's finding that Plaintiff can do her past relevant work is not supported by the medical evidence; (2) the ALJ erred in not consulting a vocational expert in determining Plaintiff's ability to perform her past relevant work; and (3) the ALJ selectively used dated medical evidence in denying Plaintiff's claim. *(Plaintiff's Brief, Doc. 11, page 9)*

---

[1]At this step, the ALJ does not specifically state that the impairments are severe but the continued analysis supports that conclusion. *See Brumbelow v. Apfel*, 2001 WL 1543852 at *7 (N.D.Tex. 2001) ("Although the ALJ did not explicitly state that Plaintiff's back impairment was severe, this fact is clearly borne out by his decision and by the fact that he proceeded through the Commissioner's entire five-step analysis for disability cases.")

## II.  Standard Of Review

If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief.  *E.g., Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1497-1500 (10th Cir. 1992).  The Court's assessment is based on a review of the entire record, where the Court can neither reweigh the evidence nor substitute its judgment for that of the agency. *E.g., Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991).  The Tenth Circuit requires the reviewing court to evaluate the record to ascertain whether there is evidence to support the ALJ's decision, regardless of whether the court would have reached a different result.  *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Castellano v. Sec'y of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994) (internal quotations and citations omitted).  "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence."  *O'Dell v. Shalala,* 44 F.3d 855, 858 (10th Cir. 1994) (citation omitted).

## III.  Plaintiff's Medical History

Plaintiff is now 39 years old.  *(R. at 43.)*  She has a history of pain in her lower back and severe left leg pain dating back to 1996, and treatment beginning in July, 1997 as indicated by her medical records. *(R. at 81, 112, 130.)*  Following an MRI of her lumbar spine in July, 1997, Plaintiff was diagnosed with "[m]ild multi-factorial central canal stenosis at L4-L5 due to a mild congenitally narrowed bony canal, a degenerative disc bulge, and osteophytes arising from the facets." *(R. at 112.)*  To relieve the severe leg pain, Plaintiff underwent a decompressive lumbar laminectomy and

discectomy in February 1998.  (R. 78 - 80.)  One month after surgery, Plaintiff reported her leg pain was gone, her back was stiff but not painful and she was able to do light housework and exercise. *(R. at 109.)*  By June, 1998, Plaintiff had resumed her normal activities, was taking no pain medication, and had no leg pain. *(R. at 108.)*  Her physician told her to "consider herself back to full strength and [that] she has no further restrictions." *(Id.)*

In May, 1998, Plaintiff suffered a serious injury to her right hand when her hand became wrapped in a rope and it was trapped between a horse and a barn. *(R. at 89, 151.)*  This injury required emergency surgery resulting in the amputation of the fifth digit on her right hand and reconstructive surgery to repair nail bed lacerations and fractures. *(R. 151 - 157.)*  By August 13, 1998, Plaintiff's hand injuries were healing in good alignment. *(R. at 145.)*  The record does not indicate any further treatment or physical therapy for Plaintiff's hand injury.

In September 1998, the pain in Plaintiff's back returned but was now a different, aching pain that was worse with physical exertion. *(R. at 107.)*  Plaintiff's physician prescribed Ibuprofen and Vicodin and referred Plaintiff to physical therapy. *(Id.)*  Plaintiff had difficulty going to physical therapy due to work conflicts *(R. at 106.)* and ongoing bladder problems *(R. at 104.)* and, therefore, made little progress. *(Id.)*  An MRI of the lumbar spine on May 22, 1999 indicated the earlier decompression surgery was successful but also showed a moderate amount of disk degeneration and "ragged" facet joints at L4-5 that might be the source of her pain. *(R. at 101.)*  Plaintiff and her physician decided to try physical therapy and pool therapy to control the pain and avoid another operation. *(Id.)*  There is no evidence in the record that Plaintiff attended physical therapy.

### IV.  Discussion/Analysis

Plaintiff contends, *inter alia*, the ALJ erred in: (1) finding that Plaintiff can do her past relevant work as the medical evidence does not support this ruling; (2) not consulting a vocational expert in determining Plaintiff's ability to perform her past relevant work; and (3) selectively using medical evidence in denying Plaintiff's claim. *(Plaintiff's Brief, Doc. 11, page 9)*

### A.  Evaluation of Residual Functional Capacity and Past Work

In this case, the ALJ made his decision that Plaintiff was not disabled at step four of the sequential evaluation process used to analyze disability claims. The decision states "claimant has retained a residual functional capacity which supports light work for all consecutive twelve month periods under review." *(R. at 13.)* In step four, the ALJ's duty is one of inquiry and factual development. *Henrie v. United States Dep't of Health & Human Services.*, 13 F.3d 359, 361 (10th Cir. 1993). *quoting Dixon v. Heckler*, 811 F.2d 506, 510 (10th Cir. 1987)  It is not the ALJ's duty to be claimant's advocate; instead, claimant continues to bear the burden of showing that her impairment renders her unable to perform her past relevant work. *Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1050 (10th Cir. 1993)

At this step, the relevant analysis is whether the claimant is able to return to her past relevant work. This analysis is comprised of three phases. First, the ALJ must evaluate the claimant's physical and mental residual functional capacity (hereinafter "RFC"). *See Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir. 1993). Second, the ALJ must determine the physical and mental demands of the claimant's past relevant work (hereinafter "PRW"). *Id*.; 20 C.F.R. § 404.1520(e). Finally, the ALJ determines whether the claimant has the ability to meet the job demands found in the second phase despite the mental and/or physical limitations found in phase one. *Winfrey*, 92 F.3d at 1023 *quoting Henrie,* 13 F.3d at 361.

In phase one analysis of a claimant's physical abilities, the ALJ should "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." *Winfrey* at 1023 *quoting* 20 C.F.R. § 404.1545(b). Following a review of the medical record regarding Plaintiff's back impairment, the ALJ found

> no reason to surmise that due to her back condition the claimant has been unable to lift 20 pounds occasionally, bend occasionally throughout the day, and stand and walk for two hours at a time, for up to six hours out of an eight hour workday, with the customary rest breaks and a meal break.

*(R. at 14.)* This finding, while not inconsistent with the medical reports, is inconsistent with the ALJ's later finding that Plaintiff's past relevant work required Plaintiff to spend "most of her time standing." *(R. at 15.)* It is also inconsistent with Plaintiff's statement that her work as a bingo caller required walking, standing and crouching for 8 hours each day, climbing and kneeling for 4 hours each day, and frequent lifting of fifty pounds or more. *(R. at 55.)*

In regard to Plaintiff's hand condition, the ALJ reviewed the medical records and a consultative exam conducted April, 1999 describing Plaintiff's reduced manual dexterity as well as her daily activities. *(R. at 89 - 91.)* The consultative examiner found that Plaintiff has "full flexion and only slightly decreased extension of her fingers." *(R. at 14, 90.)* However, "[b]ecause of her poor grip and pinch, the doctor stated that she has reduced manual dexterity (Exhibit 2F)." *(R. at 14, 90.)* The ALJ found that "the claimant is capable of handling at least bulkier objects, and that her right hand condition does not prevent her from performing light work." *(R. at 15.)* The ALJ stated that although the consultative examiner stated that Plaintiff had "reduced manual dexterity," Social Security Ruling 85-15 ("SSR 85-15") provides that "as long as an individual is capable of

manipulating and handling bulkier objects, her dexterity is sufficient to support light work activities."

*(R. at 14.)*

> However, SSR 85-15 actually states that
>
> [s]ignificant limitations of reaching or handling . . . may eliminate a large number of occupations a person could otherwise do.  **Varying degrees of limitations would have different effects, and the assistance of a VS [vocational specialist] may be needed to determine the effects of the limitations.  Fingering involves picking, pinching, or otherwise working primarily with the fingers.**  It is needed to perform most unskilled sedentary jobs and to perform certain skilled and semiskilled jobs at all levels of exertion.  As a general rule, **limitations of fine manual dexterity have greater adjudicative significance** - - in terms of relative numbers of jobs in which the function is required - - as the person's exertional RFC decreases.  **Thus, loss of fine manual dexterity narrows the sedentary and light ranges of work** much more than it does the medium, heavy, and very heavy ranges of work."

*Social Security Ruling 85-15*, 1985 WL 56857 at *7 (1985) (emphases added)  The ALJ did not use a vocational specialist to help determine the effects of the limitations described by the consultative examiner, and is not required to do so if the claimant can return to past relevant work.  *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); *Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir. 1994). The use of a vocational specialist is within the discretion of the ALJ (20 C.F.R. § 404.1566(e))  and so failure to use a vocational specialist is not legal error.  However, use of a vocational specialist (expert) could have served to provide substantial evidence for the ALJ's rulings where there is insufficient evidence to resolve inconsistencies or determine whether a particular claimant's impairments (such as manual dexterity) affect RFC and prevent performance of past relevant work.  The Court agrees that the medical evidence on the record does not support a finding that Plaintiff can return to her past relevant work due to insufficient evidence regarding her functional limitations.

In phase two, the ALJ must make findings regarding the physical and mental demands of the claimant's past relevant work. *See Henrie*, 13 F.3d at 361; 20 C.F.R. § 404.1520(e). The ALJ must obtain adequate "factual information about those work demands which have a bearing on the medically established limitations." *Social Security Ruling 82-62*, 1982 WL 31386 at *3 (1982).[2] The information about work demands can be elicited either through an "actually performed" test (the demands and duties of a relevant job as actually performed by claimant) or an "ordinarily required" test (demands and duties of a relevant job as ordinarily required by employers throughout the national economy). *Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1051 (10th Cir. 1993); *Social Security Ruling 82-61*, 1982 WL 31387 at *2 (1982).

In this case, the ALJ failed to develop sufficient facts regarding the physical requirements of Plaintiff's past relevant work as a bingo caller, in particular the necessary manual dexterity. In ruling that Plaintiff can perform the requirements of her past relevant work, the ALJ relies on a brief notation in the record wherein the Plaintiff describes the duties performed as "sell bingo cards, call numbers, pay winnings, ck [sic] machines."[3] *(R. at 77.)* There is also a limited description of the physical demands required *(R. at 55.)* to perform this occupation as actually performed by Plaintiff. 20 C.F.R. § 416.960(b)(2). In making the ruling that Plaintiff can "lift 20 pounds occasionally, bend occasionally throughout the day, and stand and walk for two hours at a time, for up to six hours out of an eight hour day" *(R. at 14.)*, the ALJ ignores the physical requirements that Plaintiff states were

---

[2]The Court recognizes that social security rulings do not carry the force and effect of law, however they are entitled to deference because "they constitute Social Security Administration interpretations of its own regulations and the statute which it administers." *Walker v. Secretary of Health & Human Servs.*, 943 F.2d 1257, 1259 (10th Cir. 1991).

[3]The Court assumes this is the description relied on by the ALJ, although the decision does not cite to a specific document in the record.

9

necessary to perform her past relevant work. *(R. at 55.)* These include walking, standing and crouching for 8 hours each day, climbing and kneeling for 4 hours each day, handling big and small objects 8 hours each day, and frequent lifting of fifty pounds or more. *(Id.)*

The transcript of the administrative hearing before the ALJ reveals there was no inquiry regarding the nature of and physical demands associated with the position of bingo caller. *(R. at 175A - 199.)* In fact, the ALJ failed to inquire as to Plaintiff's past work and failed to develop the record concerning the physical requirements of that work as Plaintiff performed it. *(Id.)* Neither did the ALJ avail himself of a vocational expert's expertise nor the Dictionary of Occupational Titles ("DOT") to develop the record as to the physical requirements as ordinarily required in the national economy.[4] *(Id.)* The ALJ has a basic obligation to ensure that an adequate record is developed during the disability hearing consistent with the issues raised. *See Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) "The file will contain all the pertinent information with respect to the medical aspects of the case as well as the nonmedical facts." *SSR 82-62* at *4. Because the record is not sufficiently developed to support the ALJ's findings regarding the physical demands of Plaintiff's past work, it will be necessary to remand to develop an adequate record on these matters.

In phase three, the ALJ must assess Plaintiff's ability to perform her past relevant work. However, having failed to complete phases one and two appropriately, the ALJ did not have the information to make the necessary phase three findings about Plaintiff's ability to meet the physical

---

[4]In her response, the Commissioner cites to the DOT job description (§ 343.467-014) for a Floor Attendant ("[v]erifies winning bingo cards to award prize money. . . [c]ollects money (fee) for participation in game and issues game cards") that includes the physical demands of the job, however this information was not used by the ALJ at the time of his decision and cannot be used to support that decision. *Defendant's Response, page 11.*

demands of her past relevant work despite her physical impairments. Therefore, the phase three findings are not supported by substantial evidence.

### B. Failure to Consult a Vocational Expert Not a Legal Error

The Plaintiff alleges the ALJ erred in not consulting a vocational expert in determining Plaintiff's RFC and her ability to perform past relevant work. As stated above, the use of a vocational expert ("VE") is within the discretion of the ALJ and, therefore, failure to use a vocational expert is not legal error at step four of the analysis. 20 C.F.R. § 404.1566(e); *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); *Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir. 1994). The RFC assessment must be based on all the relevant evidence in the record and the record can be developed by evidence other than from a VE, such as, *inter alia*, medical history, medical sources, reports of daily activities, lay evidence, recorded observations, effects of symptoms, and Plaintiff's testimony during the administrative hearing. *Social Security Ruling 96-8P*, 1996 WL 374184 (1996) at *5. A consultation with a VE could have provided valuable and supporting evidence, but the consultation was not required at step four.

### C. Selective Use of Dated Medical Evidence

The Plaintiff alleges the ALJ selectively used dated medical evidence in denying Plaintiff's claims. *(Plaintiff's Brief, Doc. 11, page 9)* The Court disagrees. The ALJ is required to consider all the evidence, but need not discuss every piece of evidence. *See Clifton v. Chater*, 79 F.3d 1007, 1009 - 1010 (10th Cir. 1996). In this case, the ALJ indicates in his decision that he considered all the evidence. *(R. at 12.) See Hamilton*, 961 F.2d at 1500 (if an ALJ states that he considered all the evidence, a reviewing court may not assume otherwise). The ALJ reviewed Plaintiff's treating physician's records and letters, the opinion of a consultative examiner *(R. at 89 - 91.)*, and decisions

of two agency medical consultants *(R. at 92 - 99.)*, as well as Plaintiff's complaints and reported daily activities. *(R. at 54, 56, 63, 64.)* The ALJ states that his conclusion that claimant "has retained a residual functional capacity which supports light work" is supported by the "opinions of the consultative examiner (Exhibit 2F) *[R. at 89 - 91.]* and the medical consultant (Exhibit 3F) [agency doctors, *R. at 92 -99.*], and [further states that] it **is not inconsistent with the opinion of any treating physician.**" [5] *(R. at 13.)*(emphasis added)

The Plaintiff alleges the ALJ improperly failed to rely on Plaintiff's treating physician's most recent medical report. *(Plaintiff's Brief, Doc. 11, page 5)* A treating physician's opinion generally is favored over that of a consulting physician. *See Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995). The ALJ did reference the treating physician's report but discounted it due to an inconsistency between Plaintiff's subjective complaints and the physical examinations.[6] *(R. at 13.) See Castellano,,* 26 F.3d at 1029 (it is clearly within the ALJ's authority to reject physician's opinions which are unsupported by or inconsistent with other objective evidence of record.) The ALJ found it necessary to depend on the consultative examination and the agency medical consultants because the Plaintiff's treating physicians did not address functional limitations or restrictions, except during limited periods. *(R. at 106, 109, 147)* The Court finds the ALJ did not selectively use dated medical evidence in denying Plaintiff's claims.

## V. Conclusion

---

[5]The RFC assessment was not completed satisfactorily, as discussed above, due to a failure to develop an adequate record regarding the physical demands of Plaintiff's past relevant work.

[6]The ALJ ruled earlier in his decision that Plaintiff lacked credibility because her "reports and testimony of symptoms and functional restrictions was not supported by the evidence overall in the disabling degree alleged."*(R. at 13.)*

Because the ALJ failed to adequately develop the record regarding the physical demands of Plaintiff's past work, and because the ALJ's finding that Plaintiff can return to her past relevant work is not supported by substantial evidence, this case must be remanded to the Commissioner for further proceedings, including a re-hearing if necessary, in accordance with this Memorandum Opinion and Order.

Based on the foregoing, the Court will grant Plaintiff's motion in part and remand this case to the Commissioner for further proceedings. The Court will deny Plaintiff's motion to the extent it asks for a ruling of legal error in the ALJ's failure to use a vocational expert and the ALJ's selective use of medical evidence.

**WHEREFORE, IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision *(Doc. 11)* is **GRANTED IN PART** and this case is **REMANDED** to the Commissioner for further proceedings, including a re-hearing if necessary, consistent with this Memorandum Opinion and Order. Plaintiff's Motion to Reverse or Remand Administrative Agency Decision *(Doc. 11)* is **DENIED** to the extent it asks for a ruling of legal error in the ALJ's failure to use a vocational expert and the ALJ's selective use of medical evidence.

**IT IS SO ORDERED.**

_Lourdes A. Martínez_
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**